JINA L. CHOI (New York State Bar No. 2699718)
  choij@sec.gov
STEVEN D. BUCHHOLZ (State Bar No. 202638)
  buchholzs@sec.gov
ELENA RO (State Bar No. 197308)
  roe@sec.gov
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

JOSEPH G. SANSONE (NY State Bar No. 4043659)
Brookfield Place
200 Vesey Street, Suite 400
New York, New York  10281
Telephone:  (212) 336-1100

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.  CV-15- |
| Plaintiff, | |
| v. | COMPLAINT |
| JOHN MCENERY III, JOHN MCENERY IV and MICHAEL RAWITSER, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

**SUMMARY OF THE ACTION**

1. This action concerns illegal insider trading and tipping by defendant John McEnery III ("McEnery III") in the securities of the formerly-public biotechnology company Clarient, Inc. ("Clarient") in advance of its acquisition through a tender offer by GE Healthcare. Before the deal was announced to the public, McEnery III learned of the potential acquisition from a close friend who

worked at Clarient. McEnery III misappropriated the information, which had been conveyed to him in confidence, by purchasing 15,000 shares of Clarient stock in early October 2010.

2. In addition to his own trading, McEnery III recommended to family and friends that they buy Clarient stock. In the days leading up to the announcement of the acquisition, McEnery III's son, John McEnery IV ("McEnery IV"), and longtime friend, Michael Rawitser ("Rawitser"), purchased Clarient shares based on confidential information about the Clarient acquisition that they learned from McEnery III. McEnery IV and Rawitser knew or were reckless in not knowing that the information McEnery III shared with them came from a Clarient insider and that McEnery III had received or misappropriated the confidential information in breach of a duty.

3. On October 22, 2010, Clarient and GE Healthcare jointly announced that GE Healthcare planned to acquire Clarient for $5 per share in a tender offer. On the day of the announcement, the closing price of Clarient stock rose by 33%. McEnery III, McEnery IV and Rawitser profited a total of more than $50,000 on their trades. Two other family members of McEnery III purchased Clarient shares based on his recommendation, realizing additional combined profits of $11,904.

4. McEnery III, McEnery IV and Rawitser knowingly or recklessly engaged in the conduct described in this Complaint, violating Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules 10b-5 and 14e-3 thereunder [17 C.F.R. §§ 240.10b-5 and 240.14e-3].

**JURISDICTION AND VENUE**

5. The Commission brings this action pursuant to Sections 21(d), 21(e) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1].

6. This Court has jurisdiction over this action pursuant to Sections 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78u-1 and 78aa].

7. Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged herein.

8. Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because a substantial part of the acts and transactions constituting the violations alleged in this Complaint occurred within the Northern District of California, and because at least one Defendant resides or transacts business in the District.

**INTRADISTRICT ASSIGNMENT**

9. This action is appropriate for assignment to the San Jose Division, pursuant to Civil Local Rule 3-2(e), because a substantial part of the events alleged herein occurred in Santa Clara County.

**DEFENDANTS**

10. <u>McEnery III</u>, age 73, resides in Capitola, California, and lived in Santa Cruz, California during the events alleged herein. He is a partner in his family business, the Farmers Union Partnership ("Farmers Union") in San Jose, California.

11. <u>McEnery IV</u>, age 50, resides in San Jose, California. He is employed by Farmers Union.

12. <u>Rawitser</u>, age 74, resides in Paso Robles, California. He owns the Mike Rawitser Golf Shop in San Jose, California. McEnery III has an ownership stake in one of Rawitser's golf businesses.

**OTHER RELEVANT ENTITIES**

13. <u>Clarient</u> was a Delaware corporation headquartered in Aliso Viejo, California. Until 2005, Clarient was known as ChromaVision Medical Systems, Inc. Clarient announced its acquisition by GE Healthcare through a merger and tender offer on October 22, 2010. Before the acquisition, Clarient's common shares were registered pursuant to Section 12(b) of the Exchange Act and traded on the NASDAQ Stock Market (ticker: CLRT). Clarient provided molecular diagnostics to assess and characterize cancer.

14. <u>GE Healthcare</u> is a unit of General Electric Company ("GE") with headquarters in the United Kingdom. GE's common shares are registered under Section 12(b) of the Exchange Act and trade on the New York Stock Exchange (ticker: GE). GE Healthcare provides diagnostic, information and life science technologies.

## FACTUAL ALLEGATIONS

**A.     The Clarient Acquisition**

15.     In May 2010, Clarient and GE Healthcare began discussing GE Healthcare's potential acquisition of Clarient through a tender offer.  By June 2010, the two companies entered into a confidentiality agreement to further discuss the transaction and representatives from the two companies met at Clarient's facilities.

16.     These discussions progressed and by September 26, 2010, GE Healthcare informed Clarient that it would be willing to offer $5.00 per share to purchase the company, conditioned on Clarient entering into exclusive negotiations with GE Healthcare.  Clarient's Board of Directors authorized management to enter into exclusive negotiations with GE Healthcare and between October 8 and October 21, 2010 representatives of Clarient and GE Healthcare negotiated the terms of the merger agreement.  Prior to the opening of the securities markets on October 22, 2010, Clarient and GE Healthcare announced the planned acquisition.

17.     McEnery III's close friend was a Senior Director at Clarient in 2010 (the "Clarient Insider").  During the period of approximately early September to early October 2010, the Clarient Insider learned from colleagues at Clarient that GE Healthcare planned to acquire Clarient.  She also joined the Clarient due diligence team to help prepare the company for the public announcement of the impending merger.

18.     McEnery III and the Clarient Insider had dated on and off since the early 1990s, and she had lived with McEnery III for several years in his Santa Cruz, California home.  The Clarient Insider and McEnery III had a history of sharing confidences.  In September and October 2010, she confided in McEnery III and shared nonpublic information regarding the planned Clarient acquisition.  Given their history, pattern and practice of sharing confidences, the Clarient Insider expected McEnery III to keep the information regarding the merger confidential.

**B.     McEnery III's Illegal Trading**

19.     On October 5, 2010, after he received the information from the Clarient Insider, McEnery III purchased 5,000 shares of Clarient stock at a cost of $17,607.

20. On October 12, 2010, McEnery III purchased an additional 10,000 shares of Clarient stock at a cost of $35,259.

21. On October 21, 2010, the day before the public announcement of the merger between Clarient and GE Healthcare, the price of Clarient stock closed at $3.74 per share. The next day, after the two companies announced the merger and tender offer, the price of Clarient stock closed at $4.98 per share, an increase of 33%.

22. As a result of the increase in the price of Clarient stock after the announcement of the merger, McEnery III realized ill-gotten gains of $20,578.

**C.     McEnery III Recommended Friends and Family Members Buy Clarient Stock**

23. In the days and weeks after he learned of the planned Clarient acquisition, McEnery III tipped his son, McEnery IV, and longtime friend, Rawitser, with material nonpublic information regarding the planned acquisition of Clarient and advised them to buy Clarient stock before the deal was announced to the public.

24. McEnery III told Rawitser to buy Clarient shares immediately because the pending acquisition announcement would drive the share price up soon. Rawitser knew or was reckless in not knowing that McEnery III provided nonpublic information about Clarient in breach of a duty of trust and confidence. On October 13, Rawitser purchased 20,000 shares of Clarient at a cost of $71,705.

25. In the same time period, McEnery III and McEnery IV began emailing each other regarding Clarient.

26. On October 18, 2010, McEnery IV wrote to his father "OK, put purchase order in for 1500 shares at Market opening tomorrow at 6:30 am. Hope they hold off on the news until tomorrow or I'm screwed:)."

27. On October 19, 2010, McEnery IV purchased 1,530 shares of Clarient in an existing brokerage account at a cost of $5,706. That same day, McEnery IV opened a new brokerage account and on October 21 bought an additional 1,323 shares of Clarient at a cost of $4,997. McEnery IV knew or was reckless in not knowing that his father provided nonpublic information about Clarient in breach of a duty of trust and confidence.

28. Later on Tuesday, October 19, 2010, McEnery IV wrote to his father: "No announcement today. Stock went up a few cents." His father wrote back: "Thursday!" McEnery IV wrote back: "Sweet."

29. After the merger was publicly announced, McEnery IV sold all of his Clarient stock on October 25, 2010 realizing ill-gotten gains of $3,288. Rawitser tendered all of his Clarient shares on December 20, 2010 realizing ill-gotten gains of $28,386.

30. Also, in the days and weeks after he learned of the planned Clarient acquisition, McEnery III recommended to other family members that they should buy Clarient stock.

31. On October 2, 2010, based on McEnery III's recommendation, a close family member of McEnery III purchased 6,256 shares of Clarient at a cost of $21,747. On October 17 and 19, 2010, also based on McEnery III's recommendation, another family member of McEnery III purchased 2,000 shares of Clarient at a cost of $7,280.

32. The first family member sold all of his Clarient stock on October 27 realizing a profit of $9,344. The second family member sold all of his Clarient stock on November 1 and 2 realizing a profit of $2,560.

**D.      McEnery III, McEnery IV and Rawitser Violated the Federal Securities Laws**

33. McEnery III and the Clarient Insider had a history of sharing confidences with one another and trusted that the other would keep those confidences. Given their history, pattern and practice of sharing confidences, the Clarient Insider expected McEnery III to keep the information regarding the Clarient acquisition confidential.

34. By virtue of their close relationship, McEnery III owed the Clarient Insider a duty of trust and confidence and breached that duty by misappropriating the information about the Clarient acquisition to unlawfully enrich himself and others.

35. In violation of the duty owed to the Clarient Insider, McEnery III knowingly and/or recklessly traded on the basis of that information. McEnery III also knowingly and/or recklessly tipped material nonpublic information to McEnery IV and Rawitser, and recommended that two other family members purchase Clarient stock.

36. McEnery III knew or recklessly disregarded that the information he misappropriated from the Clarient Insider was nonpublic and material for trading purposes. Moreover, a reasonable investor would have viewed this information as being important to his or her investment decision and significantly altering the mix of information available to the public.

37. McEnery III tipped McEnery IV and Rawitser with material nonpublic information, and recommended that the other family members purchase Clarient stock, knowing that the traders would trade, or being recklessly indifferent as to whether they would trade.

38. McEnery IV and Rawitser each traded based on the information that McEnery III provided knowing or recklessly disregarding that the information was material and nonpublic, and had been disclosed to them by McEnery III in breach of a duty of trust or confidence.

39. Unless enjoined, McEnery III, McEnery IV and Rawitser will continue to violate Sections 10(b) and 14(e) of the Exchange Act and Rules 10b-5 and 14e-3 thereunder.

**FIRST CLAIM FOR RELIEF**

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]
and Rule 10b-5 [17 C.F.R. § 240.10b-5] Thereunder**

40. The Commission realleges and incorporates by reference paragraphs 1 through 39, as though fully set forth herein.

41. Defendants, with scienter, directly or indirectly:
    a. employed devices, schemes, or artifices to defraud;
    b. made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and
    c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities;

in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, of the mails, or the facilities of a national securities exchange.

42. By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### SECOND CLAIM FOR RELIEF

### Violations of Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 [17 C.F.R. § 240.14e-3] Thereunder

43. Paragraphs 1 through 42 are re-alleged and incorporated herein by reference.

44. After GE Healthcare had taken a substantial step or steps to commence or had commenced a tender offer, Defendants:

    a. Purchased or sold or caused to be purchased or sold the securities to be sought by the tender offer while in possession of material information relating to such tender offer,

    b. which information they knew or had reason to know was nonpublic, and

    c. which they knew or had reason to know had been acquired directly or indirectly from the offering company, the issuing company, or any officer, director, partner or employee acting on behalf of the offering or issuing companies.

45. By reason of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 [17 C.F.R. § 240.14e-3] thereunder.

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Permanently enjoin Defendants, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from directly or indirectly violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

**II.**

Permanently enjoin Defendants from directly or indirectly violating Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 [17 C.F.R. § 240.14e-3] thereunder;

**III.**

Order Defendants to disgorge, with prejudgment interest, all illicit trading profits, other ill-gotten gains received, and/or losses avoided as a result of the conduct alleged in the Complaint, including, as to each Defendant, their own illicit trading profits, other ill-gotten gains, and/or losses avoided, and the illicit trading profits, other ill-gotten gains, and/or losses avoided of their direct and downstream tippees;

**IV.**

Order Defendants to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

**V.**

Grant such other relief as this Court may deem just and appropriate.

Respectfully submitted,

Dated:  September 9, 2015          /s/ Elena Ro
                                   Jina Choi
                                   Joseph Sansone
                                   Steven Buchholz
                                   Elena Ro
                                   Attorneys for Plaintiff
                                   SECURITIES AND EXCHANGE COMMISSION